No. 13,062.

CATRON *v.* KINGHORN ET AL.

(10 P [2d] 953)

Decided April 11, 1932.

Mr. WALDO RIFFENBURG, for plaintiff in error.

Mr. L. R. TEMPLE, for defendants in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter designated as there.

Plaintiffs' action for judgment on a note, and foreclosure of its security, was met by defendant's counterclaim for rescission and damages because of misrepresentation and failure of consideration. The cause was tried to the court and to review its judgment in favor of plaintiffs, defendant brings error and asks that the writ be made a supersedeas.

Plaintiffs owned a gasoline filling station in Laporte and defendant owned city property in Fort Collins, both in Larimer county. Plaintiffs, acting in part through their agent, Hurdle, sold the station to defendant for $5,500, of which $100 was paid in cash and the balance, payable in monthly installments of $100, was secured by a mortgage on the station and a deed of trust on the Fort Collins property. The whole debt was declared due for failure to pay an installment. The mortgage was foreclosed and the station bid in by plaintiffs for $3,000. In the instant case they had judgment for the balance with interest, plus attorney's fee of $250, and forclosure.

522

The principal alleged misrepresentations on which the counterclaim must stand, if at all, were: (1) That the daily receipts of the business were in excess of $50; (2) that the net monthly income for a number of months last past was $285; (3) that these averages held the year round; (4) that the investment of $5,500 was a safe, sound and profitable one.

1. The filling station was listed by plaintiffs with Hurdle, with whom the question of sale was first taken up, and who is alleged to have made some of the material misrepresentations. These were testified to by defendant and Hurdle was not called. They must be ignored because, according to defendant, before closing the deal he visited the station and discussed all these matters with plaintiffs themselves. He says he inquired of them about these things and they reiterated the representations of their agent. They were the persons presumed to have first-hand knowledge and for these reasons, and others hereinafter given, it clearly appears that defendant did not buy in reliance upon the representations of Hurdle. Plaintiffs admit they did represent that the daily receipts averaged from $40 to $50, and assert that this was true. The question was one of fact determined by the trial court from conflicting evidence and we are without power to interfere therewith. *Hallack v. Stockdale,* 14 Colo. 198, 23 Pac. 340; *North Poudre Irr. Co. v. Smith,* 75 Colo. 406, 226 Pac. 149.

2. The parties are in sharper conflict in their testimony on the question of alleged net monthly income. Defendant says plaintiffs fixed this at $285 per month. They assert they fixed no figure. In addition to the sale of gasoline, oil, etc., this station handled school supplies, furnished lunches for school children during the school year, operated a soda fountain and dealt in tobacco and candy. The transactions in gasoline, oil and grease constituted the major portion of the business. The remainder is referred to in the testimony as "the inside business." Plaintiffs kept no books and testify that they

so advised defendant at the time. "He therefore knew that any figures they gave him were largely estimates and must depend to some extent upon memory. They bought substantially all their auto supplies from the Texas Company. Defendant did not take their word for this business but it clearly appears he obtained from the agent of the Texas Company the accurate figures of its dealings with the station over a considerable period. Plaintiffs say that as the filling station business proper fell off the inside business increased so the average was fairly maintained. Defendant asserts that this is contradicted by his own experience during the time he ran the station. But, confining ourselves solely to his own testimony, we have no means of knowing, nor had the trial court, how much this inside business decreased under defendant's management. Here again it appears that the entire question was one of fact and its sole determination was for the trial court.

3. There is some conflict between the parties concerning the alleged representation that the average of the entire filling station business held good for the year round, but the most that can be said on this point is that the question was one of fact and we are powerless to interfere with the finding.

4. Plaintiffs deny that they represented the investment as safe, sound and profitable. Again this question is one of fact. But, in any event, the terms used are not defined and if the representations were made we have no key to determine the sense in which they were used or understood. Under given conditions and to particular persons a return of 4 per cent may be regarded as the index to a safe, sound and profitable investment. To other persons, and under other conditions, 25 per cent or even 50 per cent, might be required. There is ample evidence to justify the probable conclusion of the trial court that defendant made his own investigation and reached his own conclusion.

We have assumed thus far, without deciding, that

if defendant established the misrepresentations alleged in his cross-complaint the law would be with him. There is nothing in the record to suggest that any element of his case was omitted in its presentation to the trial court, or here. The burden of proof, to establish by a fair preponderance of the evidence the allegations of his cross-complaint, rested on him and if the right of the matter was with him he was simply unfortunate in his inability to produce the necessary evidence thereon.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.